IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALID AHTASHAM, *Plaintiff,* v. LYFT INC., *Defendants.* | CIVIL ACTION NO. 24-1673 |

**PAPPERT, J.**                                                                 September 12, 2024

## MEMORANDUM

Khalid Ahtasham, a driver for Lyft, sued the rideshare company alleging entitlement to uninsured motorist benefits (Count II), breach of contract (Count III), fraudulent misrepresentation (Count IV), violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count V) and negligent misrepresentation (Count VI). (Am. Compl., ECF No. 7.) He also sought a declaratory judgment that Lyft had a duty to provide him with up to $1,000,000 in uninsured motorist coverage (Count I). (*Id.* at ¶ 29.)

Lyft moved to dismiss all six counts and, in his response, Ahtasham agreed to voluntarily dismiss all but the breach of contract claim. (ECF No. 12, 18.) Ahtasham contends Lyft agreed to provide him with uninsured/underinsured motorist coverage in the event, as happened here, he was injured in an accident caused by an uninsured or underinsured driver. The Court denies Lyft's Motion for the reasons that follow.

I

On May 16, 2020, Khalid Ahtasham was in a car accident with an uninsured motorist while transporting a passenger for Lyft. (Am. Compl. ¶ 9.) He was not at

fault for the accident. (*Id.* at ¶ 18.) He suffered "serious and permanent injuries," including a wrist fracture, carpal tunnel syndrome, multiple lacerations and cervical and lumbar sprain. (*Id.* at ¶ 36.) These injuries resulted in substantial medical expenses and loss of earnings and earning capacity. (*Id.* at ¶¶ 37-41.)

At "sometime prior" to May 16, 2020, Ahtasham and Lyft entered into a Terms of Service Agreement, pursuant to which Ahtasham alleges Lyft "agreed to provide insurance coverage for [him] and his vehicle while it is being used for the business of Lyft, Inc." (*Id.* at ¶ 11.) Concurrent with the Agreement, Lyft provided Ahtasham a "Driver Guidebook," which extolled the benefits of driving for Lyft. (*Id.* at ¶ 12.) The Guidebook promised "[w]e've got you with our $1 million insurance policy," and "when you're driving with Lyft, there are four coverages included in our insurance policy," including uninsured and underinsured motorist coverage. (Guidebook at 22, ECF No. 18-1.) The Guidebook describes its UM/UIM coverage in some detail:

> UM stands for uninsured motorist and UIM stands for underinsured motorist. In the event of an accident (once you have accepted a ride and/or are transporting a passenger) with a driver who is uninsured or underinsured and is ultimately at fault for bodily injury caused to you and/or your passengers, **our UM/UIM coverage will apply up to $1 million per accident**. There is no deductible on UM/UIM policy.

(Guidebook at 24) (emphasis added).

After he began driving for Lyft, Lyft informed Ahtasham that Progressive Insurance would insure him and his vehicle. (Am. Compl. ¶ 16.) But prior to the May 16, 2020 accident, and without notice to its drivers, Lyft waived the uninsured/underinsured motorist coverage for its drivers in Pennsylvania. (*Id.* at ¶¶ 22-23.) After the accident, Ahtasham filed a claim with Progressive for UM benefits which Progressive, given Lyft's waiver, denied. (*Id.* at ¶¶ 19-22.) Ahtasham claims he

2

would not have agreed to work for Lyft had he known the company would not honor its pledge to protect him from uninsured or underinsured drivers.  (*Id.* at ¶¶ 26, 28, 44.)

## II

Pursuant to Federal Rule of Civil Procedure 12(b)(6), complaints must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts alleged permit a court to draw a reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quotations omitted).  In making this determination, courts assume well-pleaded facts are true, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them.  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).  However, "conclusory assertions of fact and legal conclusions" are not entitled to the presumption of truth.  *Schuchardt*, 839 F.3d at 347.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III

Ahtasham's breach of contract claim centers on two documents: (1) the Agreement, which both parties acknowledge is a binding contract, and (2) the Driver Guidebook, which Lyft contends is not part of its contract with Ahtasham.  Ahtasham

attached a relevant portion of the Guidebook to his Amended Complaint and the full Guidebook to his response. Lyft attached the Agreement to its reply. Since the Agreement and Guidebook form the basis of Ahtasham's claim, the Court may consider these documents without converting Lyft's Motion into one for summary judgment.[1] The Agreement also contains a choice-of-law provision, which states the interpretation of the Agreement "shall be governed by the laws of the State of California without regard to choice of law principles." (Agr. at 32, ECF No. 12-3.) The Court thus addresses initially which law applies to this dispute.

A

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Pennsylvania courts generally "honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach.* Tool, 40 F.3d 52, 55 (3d Cir. 1994). Choice of law provisions are not honored when either "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007).

---

[1] While "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), "an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (citation omitted).

Neither exception applies.  Lyft maintains its principal place of business and executive offices in San Francisco, California.  This qualifies as a substantial relationship to that state.  *See Cook v. General Nutrition Corp.*, 749 Fed. Appx. 126, 130 (3d Cir. 2018); *Kruzits*, 40 F.3d at 56.  And neither party has shown that applying California law would contravene a fundamental policy of Pennsylvania sufficient to overcome the presumption in favor of California law.[2]  Thus, the Agreement's interpretation, including whether it incorporates by reference the Guidebook's promise to provide its drivers UM/UIM coverage, is governed by California law.

B

Under California law, a breach of contract claim has four elements: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  In construing a contract, the Court must read it as a whole to "give effect to each provision," and must generally afford contract terms their "plain meaning."  *Legacy Vulcan Corp. v. Superior Court*, 110 Cal. Rptr. 3d 795, 803 (Cal. Ct. App. 2010).

Ahtasham claims the Agreement and Guidebook together constitute his contract with Lyft and he relies on the provision in the Guidebook promising that "[i]n the event of an accident . . . , our UM/UIM coverage will apply up to $1 million per accident."

---

[2]  Choice-of-law provisions stating that a contract's enforcement is to be "governed" by the laws of another state generally relate only to the construction and interpretation of the contract at issue, and not its validity.  *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp. 2d 589, 593 (E.D. Pa. 1999).  The parties spend a great deal of time disputing contract formation—i.e., whether the Guidebook is itself an enforceable contract.  Although this question would be outside the reach of the Agreement's choice-of-law provision, it is not necessary to resolve it.  Because there is a plausible allegation that the Agreement incorporates the Guidebook's UM/UIM policy by reference, the question is one of contract interpretation.

(Am. Compl. ¶ 14.)  Lyft argues this representation is (1) barred as a matter of law by the parol evidence rule and (2) rendered inapplicable by a purported "express disclaimer" in the Guidebook.

i

The parol evidence rule provides that when the parties to a contract enter into an integrated written agreement, the "terms included therein may not be contradicted by evidence of a prior agreement or of a contemporaneous oral agreement." Cal. Civ. Proc. Code § 1856(a) (Deering 2024).  An integrated agreement is "a writing or writings constituting a final expression of one or more terms of an agreement." *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.*, 291 P.3d 316, 318 (Cal. 2013) (citations omitted).  A merger clause, which is a contractual term stating that the contract is the complete agreement between the parties, is "generally conclusive on the issue of integration." *IIG Wireless, Inc. v. Yi*, 231 Cal. Rptr. 3d 771, 783 (Cal. Dist. Ct. App. 2018).

But the parol evidence rule does not exclude evidence offered to "explain an extrinsic ambiguity or otherwise interpret the terms of the agreement . . . ." Cal. Civ. Proc. Code § 1856(g) (Deering 2024).  Thus, if the Court decides "that the language of a contract, in the light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible." *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.*, 442 P.2d 641, 645 (Cal. 1968) (citations omitted).

Here, the parol evidence rule does not preclude consideration of the Guidebook's promises in interpreting the Agreement, even with a merger clause,[3] because the Agreement is sufficiently ambiguous with respect to Lyft's obligations to help insure its drivers. As an initial matter, the Agreement twice refers to unspecified documents that it "incorporates by reference." *See, e.g.*, (ECF No. 12-3 at 19 (". . . your breach of this Agreement or the documents it incorporates by reference . . . .")); (*id.* at 33 ("You agree that this Agreement and all incorporated agreements may be automatically assigned by Lyft . . . .")).[4]

More importantly, two of the Agreement's provisions indicate that the Guidebook's promise to provide Lyft drivers with uninsured or underinsured motorist coverage are part and parcel of the contractual relationship between those drivers and the company. First, the Agreement states that it uses information it collects on drivers "for the following purposes related to driving on the Lyft Platform: . . . Calculating and **providing Lyft's auto insurance policy** and analyzing usage patterns for safety and insurance purposes." (Agr. at 38) (emphasis added). Second, it states that Lyft may share drivers' information with "our insurance partners to help determine and **provide relevant coverage in the event of an incident**." (Agr. at 40-41.) These two

---

[3] The merger clause reads "[t]his Agreement sets forth the entire understanding and agreement between you and Lyft with respect to the subject matter hereof and supersedes all previous understandings and agreements between the parties, whether oral or written." (Agr. at 33.)

[4] Extrinsic documents may "be incorporated by reference in a contract so long as (1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3) the terms of the incorporated document are known or easily available to the contracting parties." *B.D. v. Blizzard Entertainment, Inc.*, 292 Cal. Rptr. 3d 47, 65-66 (Cal. Dist. Ct. App. 2022). "The contract need not recite that it 'incorporates' another document, so long as it guides the reader to the incorporated document." *Shaw v. Regents of University of California*, 67 Cal. Rptr. 2d 850, 856 (1997) (quotation omitted). The Amended Complaint plausibly alleges the possibility that the Guidebook's terms are incorporated by reference into the Agreement.

7

provisions cite to insurance coverage Lyft is agreeing to provide its drivers, and the Guidebook may more fully describe the types of coverage Lyft provides, including uninsured and underinsured motorist coverage.

The Agreement's mention of an auto insurance policy creates an ambiguity as to what that policy might be.  The Guidebook's description of Lyft's auto insurance policy is admissible to resolve this ambiguity.  And Ahtasham's allegation that Lyft breached the Guidebook's clear promise of UM/UIM coverage is sufficient to plausibly state a claim for breach of contract.[5]

ii

Lyft also contends that, even if the parol evidence rule does not preclude consideration of the Guidebook's promises, the Guidebook itself states that it is "not intended to be a 'handbook' or a 'rulebook,' it is not comprehensive, and may not reflect changes at Lyft that may have occurred after this was printed." (Guidebook at 2.)  Lyft calls this an "express disclaimer," but there is nothing express about it.

To start, that the Guidebook is "not intended to be a handbook or a rulebook" does not preclude it from being part of its contract with Lyft drivers.  Nor is it relevant that the Guidebook is not "comprehensive."  Finally, it does not matter that the Guidebook "may not reflect changes at Lyft that may have occurred after this was printed."  Such language could reasonably be read to do no more than indicate the

---

[5] Pennsylvania law would dictate the same result.  *See Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425, 437 (Pa. 2004) ("Parol evidence is admissible to explain or clarify or resolve [an] ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic collateral circumstances."); *CKSJB Holdings LLC v. Epam Sys.*, 837 Fed. Appx. 901, 904-905 (3d Cir. 2020) ("A contract is only ambiguous when the provisions in controversy are reasonably susceptible to different interpretations.  Absent an ambiguity, courts will enforce the plain meaning of an agreement.").

possibility that a newer version of the Guidebook exists; it does not mean the language promising its drivers insurance coverage has changed.

Finally, this disclaimer is much weaker than those in the cases upon which Lyft relies.  In *Somers v. General Electric Co.*, the disclaimer in an employee handbook read:

> This handbook does not create a contract of employment between the Company and any individual.  The General Electric Company reserves the right to terminate, amend, suspend, replace or modify the plans described in this handbook … at any time and for any reason.  No individual has a vested right to any benefit under a plan.

No. 22-1093, 2022 WL 17337560, at *2-3 (3d Cir. Nov. 30, 2022).

Similarly, in *Jones v. Washington Health Systems*, the handbook stated that "the policies stated in this handbook are guidelines only and are subject to change at the sole discretion of the Hospital," and that the promises made in the handbook "should not be construed as and [do] not constitute a contract guaranteeing employment for any duration."  No. 16-1308, 2018 WL 1536598, at *7-8 (W.D. Pa. Mar. 29, 2018).

In both cases, the disclaimers were far stronger than the Guidebook's disclaimer, barring suits based on promises in the respective handbooks.  Here, both parties acknowledge that the Agreement is a binding contract, and Ahtasham plausibly alleges that it incorporates the Guidebook's promise to provide UM/UIM coverage.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

9